# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

CIVIL ACTION NO. 10-146-WOB-CJS

BRYAN STEPP                                                                             PLAINTIFF

v.                             **REPORT AND RECOMMENDATION**

CASTRUCCI OF
ALEXANDRIA, LLC, ET AL.                                         DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Before the Court is Defendants' Motion for Attorney Fees pursuant to 28 U.S.C. § 1927 and the inherent authority of the Court. (R. 30). Defendants have also moved for hearing and oral argument on the motion. (R. 31). This matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). (R. 34). Plaintiff having filed his Response (R. 35), and Defendants having filed their Reply (R. 38), the matter is ripe for review. For the reasons set forth below, it is recommended that Defendants' Motion for Attorney Fees (R. 30) be **DENIED.**

**I.    FACTUAL BACKGROUND**

Plaintiff Bryan Stepp's lawsuit filed against Defendants Castrucci of Alexandria, LLC ("Castrucci") and Bryan Smith alleged violation of the Family and Medical Leave Act (FMLA) and intentional infliction of emotional distress. (R. 1). From November 2007 until his termination in August 2009, Plaintiff Stepp worked as a finance manager for Defendant Castrucci. Defendant Smith is Castrucci's general manager. (*Id*. at 2).

On June 11, 2009, Stepp's five-year-old daughter was diagnosed with stage-four metastatic kidney cancer. (*Id*. at 3). Despite aggressive chemotherapy treatments, doctors were forced to remove one of her kidneys. (*Id.*). Prior to her diagnosis, Plaintiff's daughter had been a cheerleader for the youth football team on which her brother played. (*Id.*). To honor her battle with cancer, the team planned to acknowledge her at the beginning of an exhibition football game scheduled for August 15, 2009, at Paul Brown Stadium. (*Id.*).

Upon learning of this event, Stepp informed Gary Edmondson[1] and asked to leave work one hour early on August 15, 2009, to attend the event. He stated that "he needed to attend the event to provide his daughter with emotional support and to meet her physical needs." (*Id.*). He further explained that his daughter could not walk onto the field and, because his wife was nine months pregnant and physically unable to carry his daughter, he would need to transport his daughter to the stadium and assist her.[2] (*Id.* at 3-4). Edmondson approved Plaintiff's request. (*Id*. at 4).

On August 14, 2009, the day before the event, Smith informed Stepp that he could not leave early to attend the event. (*Id.*). Stepp again explained the reasons he needed to attend and informed Smith that he had received prior approval from Edmondson. (*Id.*). Smith refused to give Plaintiff permission to leave early.

---

[1]As the general manager, Defendant Smith oversaw the dealership's operations. However, Edmondson assumed the duty of managing the dealership's personnel when Smith was not on duty. (*Id*. at 4). As Plaintiff notified Edmondson, Defendant Smith was presumably not on duty on the date or at the time Plaintiff asked to leave early to attend his daughter's event.

[2]Plaintiff's daughter was released from the hospital just two days before the event at issue, after being hospitalized for two days due to vomiting and abdominal pain. As a result of this hospitalization, Stepp's daughter was fatigued and had to be carried to the field.

2

Despite not having Smith's permission, Stepp left early on August 15, 2009, to attend the event with his daughter. (*Id*.). Stepp believed it important to his daughter's "psychological well-being," as one of his daughter's physicians informed him "that it was important to Lillyanne's recovery for her to be involved in activities that could boost her morale and allow her to feel normal." (*Id*.). Prior to leaving, Stepp asked Edmondson whether he wanted him to leave his keys, to which Edmondson answered that he did.

## II. PROCEDURAL HISTORY

On September 18, 2009, Plaintiff's counsel sent a letter to Michael Castrucci, the owner of the dealership, communicating Stepp's view of the circumstances surrounding his termination and contending that Defendants had violated the FMLA and committed the tort of outrage. (R. 30-5). The letter did not make a settlement demand, but rather invited Mr. Castrucci to respond with his understanding of the events. On October 13, 2009, Defendants sent a response, arguing that no FMLA violation had occurred. (R. 30-6).

Following some settlement discussions, the timing and details of which are disputed,[3] Stepp filed his Complaint with this Court on July 6, 2010. (R. 1). Thereafter, the parties engaged in somewhat contentious discovery, as Plaintiff claimed that Defendants were engaging in questionable

---

[3] Prior to filing suit, counsel had conferred and, according to Plaintiff, defense counsel invited him to make a settlement demand, to which Stepp requested $150,000. (R. 35-1, at 1). Discussions continued for two months, with Stepp thereafter considering whether he wanted to press ahead with formal court proceedings. He concluded that he did. On May 20, 2010, Plaintiff's counsel emailed defense counsel a courtesy copy of the Complaint. (R. 35-6). This email asked defense counsel to contact him if Defendants' position on settlement had changed. Defense counsel requested another settlement demand, and Stepp again sought $150,000. (R. 35-7, at 3). This demand was not satisfied.

Defendants describe the negotiations differently, stating that they responded to Plaintiff's initial letter in October 2009, but then nothing further occurred for eight months. At that time, Plaintiff suddenly announced his intention to file a lawsuit unless $180,000 was paid, although the email correspondence attached to Plaintiff's Response brief reflects a settlement demand of $150,000. (R. 35-7, at 3). Defendants again responded that no FMLA violation had occurred.

3

discovery tactics to "bully" him into dismissing his lawsuit. (R. 35, at 6-10). For example, Stepp complained that Defendants contacted his creditors and his subsequent employer to ask about his use of a second social security number, implying Stepp had engaged in Social Security fraud.[4] Stepp also complained that Defendants went through his trash to obtain documents, and asked insulting and irrelevant questions during the deposition, such as whether Plaintiff was the father of one of his children.[5]

On March 30, 2011, Stepp filed a Motion to Dismiss with Prejudice, stating that because he had obtained new employment within months after his termination, his "economic damages [were] therefore limited, and he ha[d] concluded that the damages he [stood] to recover [were] not worth the intrusion into his privacy, or the Defendants' not-so-subtle threats to his career and credit worthiness." (R. 24, at 2). Despite this motion, Defendants insisted on deposing Dr. Lars Wagner, Stepp's daughter's treating oncologist.[6] (R. 35, at 11). Defendants then responded to Plaintiff's Motion to Dismiss, raising no objection to the dismissal of the action but refusing to agree that the parties should bear their own costs. (R. 26, at 3). The presiding District Judge thereafter dismissed the action with prejudice, but provided that costs would be determined later. (R. 29). Defendants then filed the instant Motion for Fees. (R. 30).

---

[4] Stepp acknowledges that he has two Social Security numbers as a result of being the victim of identity theft.

[5] Both sides argue the validity of this assertion, as well as the propriety of the discovery techniques used throughout the case generally. The only relevancy of these issues rests in the extent to which they motivated Plaintiff's desire to pursue voluntary dismissal, and not in whether the discovery techniques were in and of themselves proper.

[6] The court-imposed discovery deadline in this case was March 31, 2011. (R. 11). However, Stepp's counsel agreed to defense counsel's request to depose Dr. Wagner, Lillyanne's pediatric oncologist, after the deadline, and the deposition was subsequently scheduled for April 1, 2011. (R. 35, at 11).

4

## III. ANALYSIS

Defendants' motion seeks an award of attorney fees, litigation expenses, and court costs against "Plaintiff and/or his counsel" pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. (R. 30). As demonstrated below, Defendants fail to satisfy the standard for award of fees under either of these authorities; therefore, it will be recommended that their Motion for Fees and Costs be denied.

### A. Award of Fees Pursuant to 28 U.S.C. § 1927

Section 1927 provides for the award of sanctions against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Upon such a finding, that attorney "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.*

Award of sanctions under this statute is appropriate when an attorney "objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). The purpose of such an award is to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Id.* (citing *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230-31 (6th Cir. 1986)).

Sanctions issued pursuant to § 1927 do not require a showing of subjective bad faith or conscious impropriety, but something more than negligence or incompetence is required. *Id.* "[A] court should consider whether 'an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous

5

claims.'" *Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 275-76 (6th Cir. 2010) (quoting *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009)). The conclusion that an attorney failed to "undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (citing *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992)).

### 1. Plaintiff's FMLA Claim Was Not Frivolous

In his Complaint, Stepp asserted an "interference" claim, alleging his employer interfered with, restrained, or denied his exercise of or attempt to exercise FMLA rights. (R. 1, at 6) (citing 29 U.S.C. § 2617, which grants a private right of action against an employer who interferes with the exercise of FMLA rights). In order to establish an interference claim in the Sixth Circuit, a plaintiff must demonstrate: (1) he is an eligible employee; (2) the defendant is an employer within the meaning of the FMLA; (3) he is entitled to FMLA leave; (4) he provided the employer with requisite notice; and (5) the employer denied him FMLA benefits. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)). Defendants challenge the third element, arguing that Stepp was not entitled to FMLA leave.

The FMLA provides that an eligible employee is entitled to a total of twelve weeks of leave during any twelve-month period if certain circumstances exist. 29 U.S.C. § 2612(a)(1). The situation relevant to this case permits leave "[i]n order to care for . . . a . . . daughter . . . of the employee, if such . . . daughter . . . has a serious health condition." *Id*. § 2612(a)(1)(c). Accordingly, Stepp must demonstrate that his daughter had a serious health condition and that he required leave

6

to care for her. Defendants argue Stepp cannot establish either of these elements, and therefore his claim fails.[7]

### a. Serious Health Condition

Stepp alleged in his Complaint that his daughter's stage-four kidney cancer constituted a serious health condition for purposes of the FMLA. The statute defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The regulations promulgated by the Department of Labor further define the requirements for a condition to constitute a "serious health condition." "Inpatient care" is defined as an "overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity." 29 C.F.R. § 825.114. "Incapacity" is defined as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id*. § 825.113(b). A condition involves continuing treatment by a health care provider

---

[7]Defendants also argue that Lillyanne's presence at the event was not "medically necessary," and so Stepp was not entitled to leave. However, the applicable statute provides that FMLA leave taken *intermittently* must be medically necessary, not that all leave taken must be medically necessary. *See* 29 U.S.C. § 2612(b) (providing that "leave . . . may be taken intermittently or on a reduced leave schedule when medically necessary"). The regulations define intermittent leave as "FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a).

Plaintiff did not allege that he was denied intermittent leave under the FMLA. In fact, his Complaint never used the word "intermittent" nor suggested he needed to take leave in the form of separate blocks of time. Plaintiff alleged only that he was denied approximately one hour of the twelve weeks to which he was entitled under the FMLA. *See Hoffman v. Prof'l Med Team*, 394 F.3d 414, 418 (6th Cir. 2005) (recognizing that there are three different types of FMLA leave available: block, intermittent, and reduced leave schedule). Therefore, as it was not frivolous for Plaintiff not to be relying on intermittent leave, which is what Defendant argues, Plaintiff did not need to establish that leave was medically necessary. *See id.*; *Johnson v. Kmart,* 596 F. Supp. 2d 1045, 1051 (E.D. Mich. 2009) (analyzing the plaintiff's entitlement to leave under 29 U.S.C. § 2612(a)(1)(c), not as a claim for intermittent leave, when he was absent from one shift to care for his son).

so as to constitute a "serious health condition" when a period of incapacity results from: (1) treatment; (2) pregnancy or prenatal care; (3) chronic conditions; (4) permanent or long-term conditions; or (5) conditions requiring multiple treatments. *Id*. § 825.115.

In light of these definitions, Stepp's claim that his daughter's cancer constituted a "serious health condition" is not frivolous. He maintains that Lillyanne's condition satisfies the "inpatient" prong of the "serious health condition" definition because throughout her cancer treatment, she periodically had to stay at the hospital. In fact, she was in the hospital only days before the event at issue. (R. 35-2, at 1). Stepp further maintains that although the event in question occurred during the summertime, and so his daughter was not in school, she was fatigued and needed assistance with her daily activities, including walking, and therefore she was incapacitated. (*Id*.) (noting that Stepp had to carry his daughter onto the field).

Defendants point to Dr. Wagner's testimony that Lillyanne was not incapacitated on the day in question. But his testimony was that she was not incapacitated "in the sense of requiring to be in bed all the time or not able to feed herself" (R. 30-4, at 12), falling short of the FMLA's legal definition of incapacity. Thus, this testimony does not rebut Plaintiff's contention that his daughter's cancer satisfied the "inpatient care" definition or otherwise evidence Plaintiff's argument on the point was legally unsound.[8] Therefore, Plaintiff's daughter's condition satisfied the plain language

---

[8]Defendants' further argument that Plaintiff's daughter was not receiving treatment at the event in question is irrelevant to a determination of whether she had a "serious health condition." The definitions provided by the regulations require *conditions* that *involve* either inpatient care or continuing treatment by a healthcare provider, and these definitions focus only on whether a "serious health condition" exists. Whether leave was justified and appropriately used depends on whether an employee was needed "to care for" a covered family member. *See Fioto v. Manhattan Woods Golf Enters., LLC*, 270 F. Supp. 2d 401, 404 (S.D.N.Y. 2003) (recognizing that leave is available only "to care for" a family member).

of the statute and applicable regulations.[9] *See also Gross v. Illinois Tool Works, Inc.*, No. C-1-06-205, 2008 WL 4070272, at *1 (S.D. Ohio Aug. 27, 2008) (defining cancer as a "serious health condition").

### b. To Care For

In order to be entitled to FMLA leave, the eligible employee must also demonstrate that he is needed "to care for" a covered family member, 29 U.S.C. § 2612(a)(1)(c), which includes both physical and psychological care. 29 C.F.R. § 825.124(a). Plaintiff argues he was needed to provide such care to his daughter during the event at the stadium, and the facts alleged by him support this, which also suggests that this argument is not frivolous.

The regulation explains that physical care includes "situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor." 29 C.F.R. § 825.124(a). Stepp alleges his daughter, released from the hospital only days before, was fatigued and incapable of walking, and he had to carry her onto the field. (R. 35-2, at 1). This supports his assertion that he was needed to physically care for her while she attended this event.[10]

---

[9] Defendants also present several arguments that Plaintiff's daughter did not have a "serious health condition" as defined by the "continuing treatment" definition. The factual record is insufficient to discern whether her condition satisfies one of the sections listed under the "continuing treatment" definition. However, since a "serious health condition" requirement can also be satisfied through the "inpatient care" definition, it is not necessary to consider whether her condition satisfies the "continuing treatment" definition.

[10] It is irrelevant that other individuals were present who could have carried Plaintiff's daughter onto the field. *See Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1206 (S.D. Cal. 1998) (recognizing that the FMLA did not require the employee to demonstrate that no other caretaker was available to care for the child before leave can be obtained).

9

Psychological care includes "providing psychological comfort and reassurance which would be beneficial to a child . . . with a serious health condition who is receiving inpatient or home care." 29 C.F.R. § 825.124(a). The legislative history reveals that this provision is to be broadly construed, *see* S. Rep. No. 103-3, at 24 (1993), and courts generally recognize the "psychological care" standard as relatively easy to satisfy. *See Fioto*, 270 F. Supp. 2d at 405 (noting that the evidentiary standard for psychological care is "very loose"). Moreover, the regulations and case law clearly demonstrate that an employee can satisfy the "to care for" requirement by providing psychological care alone.[11] *See* 29 C.F.R. § 825.124 (recognizing that "needed to care for" includes "providing psychological comfort"); *Bell v. Prefix*, 321 F. App'x 423, 427 (6th Cir. 2009) (concluding that by reassuring and telling his father everything would be okay, the plaintiff had provided psychological care on the date in question).

Dr. Wagner testified that Lillyanne's attendance at the event was beneficial to her recovery, stating that "it may be psychologically helpful for her to do normal events of childhood, and I would think that this is a normal event of childhood in the sense that she was quite interested in cheerleading, I think there is some psychologic benefit." (R. 30-4, at 13). Dr. Wagner also testified to the importance of parental participation and emotional support in situations such as these. (*Id*. at 25) (stating that "a child's parents are crucial in facilitating physical recovery from treatments as

---

[11]Defendants contend that psychological comfort is insufficient, citing in support *Tayag v. Lahey Clinic Hosp., Inc.*, 677 F. Supp. 2d 446, 451 (D. Mass. 2010) and *Fioto*, 270 F. Supp. 2d at 401. Review of these cases reveals that neither stands for this proposition. In *Tayag*, the court stated that although "it [was] far from clear that caring for a seriously ill spouse on a trip for non-medical religious purposes" garnered FMLA protection under a theory of psychological care, the plaintiff was not entitled to FMLA leave because "nearly half" of the trip was spent visiting friends, family, and churches. 677 F. Supp. 2d at 452. In *Fioto*, the court granted the defendant's motion for judgment as a matter of law based on a lack of evidence that he had provided his mother with psychological care on the day in question. 270 F. Supp. 2d at 405-06.

well as maintaining a sense of normalcy and optimism that is critical for their emotional health). Thus, participation in this event was beneficial to treatment and recovery, as was Plaintiff's presence, support, and reassurance.[12] *See Bell*, 321 F. App'x at 427.

The regulation addressing the "to care for" element of entitlement to FMLA leave does not define "inpatient" or "home care." Several facts, though, suggest that Stepp's daughter's circumstance satisfies this requirement. She satisfied the "inpatient care" definition of the "serious health condition" element. Additionally, she had been released from the hospital only two days prior to the event, and was still being treated for her kidney cancer. Under such circumstances, it would seem logical that she was receiving both home care and inpatient care, as defined for FMLA purposes.[13] More importantly, the focus is on whether Stepp was providing psychological care, reassurance, and support for his daughter at the event. *See Fioto*, 270 F. Supp. 2d at 404 (recognizing that the "FMLA does not cover absences that do not implicate giving physical or psychological care for a relative"). Plaintiff alleges that he was.[14] The contention that he was needed to care for his daughter by providing psychological support was not so outlandish as to render his

---

[12] While the record does not reflect whether such psychological support and reassurance was actually given during the event, Plaintiff is not required to prove his case for purposes of defending against this motion.

[13] Dr. Wagner testified that her participation in normal childhood events was important to her psychological and emotional recovery. Attendance at this game could be argued as being part of a home care treatment plan.

[14] Defendants point to *Tayag*, arguing Stepp's primary purpose for attending was to coach his son's game and, therefore, any psychological support was a mere "incidental benefit." Stepp's status as the assistant coach and fact that he also watched his son play football do not per se negate the argument that he offered his daughter psychological support. The deciding factor for the *Tagag* court was that nearly half of the time was spent visiting friends and family and that the event at issue was, in fact, a vacation. 677 F. Supp. 2d at 452. Here, Plaintiff has offered evidence he was there to support his daughter. (*See* R. 35-13, at 9) (stating during Mrs. Stepp's deposition that her husband remained close to his daughter, even if that was also near the team).

claim frivolous. *See Wiseman v. Vanderbilt Univ.*, No. 3:04-0946, 2005 WL 3055661, *9 (M.D. Tenn. Nov. 14, 2005) (concluding that a fact question existed as to whether a plaintiff's presence was required each morning to make sure that her son got on his school bus because she was needed "to care for" her son's physical or psychological needs or because of his poor organizational skills). Plaintiff's claim was supported by the statutory language, applicable regulations, and case law,[15] regardless of whether Plaintiff would have succeeded in demonstrating at trial that he is entitled to FMLA leave. Therefore the claim was not frivolous.

### 2. Plaintiff's Litigation Tactics Did Not Multiply Proceedings

Defendants contend that "[b]y persisting with the case until the very end of discovery and then abandoning it to try to avoid a deposition of the critical witness in the case, all the while demanding a substantial payment, Plaintiff's counsel 'unreasonably and vexatiously multiplied' the proceedings in the case." (R. 30-1, at 12). This contention, however, is not supported by the record.

As just discussed, Plaintiff's FMLA claim is viable. Plaintiff was not otherwise "persisting" with a frivolous case. While Defendants argue in passing that Plaintiff's counsel failed to reasonably investigate the merits of the claim before filing, even accepting this allegation would not carry Defendants' burden, as this alone does not automatically multiply the proceedings. *Ridder*, 109 F.3d at 298. As for abandoning the action to avoid Dr. Wagner's deposition, Plaintiff agreed to allow the deposition after the close of discovery. What the record instead reflects is Plaintiff's dissatisfaction

---

[15]Defendants argue Stepp's claim finds no support in the present case law, citing to *Bell*, 321 F. App'x at 427, *Scamihorn v. General Truck Drivers*, 282 F.3d 1078 (9th Cir. 2002), and *Mora*, 16 F. Supp. 2d at 1206-07. Yet, each of these cases recognizes that psychological comfort and reassurance does satisfy the "needed to care for" requirement for FMLA leave. *See Bell*, 321 F. App'x at 427; *Scamihorn*, 282 F.3d at 1087-88; *Mora*, 16 F. Supp. 2d at 1206-07. This proposition is supportive of Plaintiff's legal theory; each case's factual differences do not destroy the legal relevance of their consideration of the psychological comfort and support element of FMLA analysis.

with Defendants' discovery tactics and concern about collateral consequences of the case. (R. 35, at 6-10). Finally, nothing suggests that Plaintiff was attempting to exact settlement throughout discovery. Settlement figures were discussed prior to the filing of the lawsuit.[16] But Defendants fail to point to any evidence that Plaintiff continued to pursue settlement throughout the litigation.

Plaintiff's attorney's conduct did not "objectively 'fall[] short of the obligations owed by a member of the bar to the court'" and so his conduct did not cause additional expense to Defendants. *Red Carpet Studios*, 465 F.3d at 646. Therefore, Defendants' Motion for Fees pursuant to 28 U.S.C. § 1927 should be denied. *See Bell v. Prefix, Inc.,* No. 05-74311, 2007 WL 3071534, at *3 (E.D. Mich. Oct. 11, 2007) (denying motion for fees pursuant to § 1927 because no evidence suggested that the case needlessly stagnated or that the claim was frivolous).

### B. Sanctions Imposed Pursuant to the Inherent Authority of the Court

Unlike sanctions imposed pursuant to § 1927, those imposed pursuant to a court's inherent authority do require a showing of bad faith, or conduct "tantamount to bad faith." *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003)). To award attorney fees under this power, the Sixth Circuit requires the district court find that: (1) the claims pursued were meritless; (2) counsel knew or should have known the claims were meritless; and (3) the "motive for filing the suit was for an improper purpose such as harassment." *Id.* (citing *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)). The mere fact that an action is without merit, or that the party knowingly pursued a meritless claim, does not constitute bad faith. *Id.* at 753. More is required, such as a finding that the party

---

[16] *See* footnote 3, *supra*, for details.

acted for the purposes of harassment or delay, or that the party improperly used the courts. *Id.* at 754.

The procedural posture of this motion is unusual, being filed after Plaintiff's voluntary dismissal of the action, just before the close of discovery and not after a trial on the merits or merits adjudication in Defendants' favor upon a dispositive motion. Thus, no prior determination that the claims are meritless based upon consideration of a complete factual record has been made.

Defendants argue Plaintiff's bad faith is demonstrated by the fact that Stepp pursued this case to "extract settlement" and "litigated under the false pretense that it was supported by real medical evidence." (R. 30-1, at 12). But Defendants fail to point to any evidence supporting this argument. There is evidence a pre-suit demand was made, perhaps at Defendants' request, but no evidence that another settlement demand was ever made. Therefore, nothing suggests that this action was pursued to extract settlement.

Defendants submit the matter was "litigated under the false pretense that it was supported by real medical evidence" because Dr. Wagner did not testify that Plaintiff's daughter's attendance at the event was "medically necessary." However, Plaintiff never alleged that his daughter's attendance was medically necessary, or that Dr. Wagner would testify to such. Nothing in Defendants' filings evidences Plaintiff litigated his claim believing that it lacked evidentiary support and, as already discussed, Plaintiff's claim was not frivolous.

Defendants also insist that the action was brought only to harass them, pointing to the fact that Plaintiff filed his Motion to Dismiss only two days before Dr. Wagner's deposition and then failed to even appear for the deposition. This timing of the dismissal does not amount to harassment. As already discussed, the record does not reflect that Plaintiff's dismissal was an attempt to avoid

Dr. Wagner's deposition, but rather to avoid what Plaintiff perceived as the continued frustrations of litigation. Plaintiff's Motion to Dismiss recognized that his economic damages were limited. Plaintiff simply "concluded that the damages he [stood] to recover [were] not worth the intrusion into his privacy, or the Defendants' not-so-subtle threats to his career and credit worthiness." (R. 24, at 2). The record reflects that Plaintiff felt threatened by Defendants' actions in contacting his employer and mortgage company, and regardless of whether he had reason to be concerned, his desire to avoid future complications in other areas of his life does not constitute bad faith. Defendants have failed to establish that Plaintiff or his attorney acted in bad faith and, therefore, their request for attorney fees pursuant to the inherent authority of the Court should be denied.

## IV.     CONCLUSION AND RECOMMENDATION

As previously noted, Defendants filed a separate Motion for Hearing and Oral Argument. (R. 31). However, since appropriate consideration of and a recommendation on Defendants' Motion for Fees can be made without need for oral argument, Defendants' Motion for Hearing and Oral Argument (R. 31) will be **DENIED** by separate order entered concurrently herewith.

Additionally, for the reasons stated herein, **IT IS RECOMMENDED** that Defendants' Motion for Fees and Costs Under 28 U.S.C. § 1927 and the Court's inherent authority (R. 30) be **DENIED,** and that this matter be **STRICKEN** from the active docket of the Court.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y*

*of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within 14 days of being served with those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 19th day of December, 2011.

Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\Orders\civil cov\2010\10-146 Fee Mtn R&R.wpd

16